### TEMPLETON *v.* WILE *et al.*

*(City Court of New York, General Term.* November 23, 1888.)

1. CONTRACTS—BY LETTER—WHEN COMPLETE.
    Defendant wrote to plaintiff that under specified conditions he would accept the agency for the sale of plaintiff's goods, concerning which negotiations were pending, and requested a contract for five years, and directed plaintiff, "under these conditions," to ship a certain quantity of the goods. Plaintiff the same day wrote to defendant a letter containing additional propositions. *Held*, that the mere act of shipping the goods is not an assent to defendant's proposition for a contract for five years, where both continue to treat their respective propositions as not accepted, and each finally rejects a material condition proposed by the other, and they treat other goods as ordered and shipped as in an ordinary contract of sale.

2. APPEAL—REVIEW—OBJECTION NOT RAISED BELOW.
    Where the issue at the trial, as treated by both parties, is whether there was a contract between them for the term of five years, the question whether there was a contract for a reasonable time cannot be first raised on appeal.

3. SAME.
    Where both parties at the trial treat the question to be determined as one of law only, it cannot be alleged on appeal that a question of fact is involved.

4. EVIDENCE—BURDEN OF PROOF.
    A defendant who alleges a contract, and breach thereof, has the burden of proving its terms.

Appeal from judgment on report of GEORGE H. YEAMAN, Referee.

Action by David Porter Templeton against Julius and Isaac Wile for Bellthal mineral water sold by the Bellthal Brunnen Company to defendants, the claim for which the company assigned to plaintiff. Defendants alleged a contract by the Bellthal Brunnen Company, giving defendants the sole agency for the term of five years, for the sale of its mineral waters in the United States, and that the company failed to perform the same. It was stipulated that if the referee should find that such contract was made, and'that defendants complied with it, or were excused from doing so, the plaintiff could not recover. The Bellthal Brunnen Company was a corporation doing business at London, and at Bellthal Brunnen, in Germany, and Joseph Casper was its manager at the latter place. The negotiations were conducted by letter. Defendants' Exhibit No. 5 is the defendants' letter to Casper of July 20, 1886, referred to by the referee. The referee's opinion is as follows:

"This trial has been conducted on the theory that there is no question of fact in the case. The question is conceded to be one of law, whether the correspondence and the action of the parties resulted in a valid and binding contract, described in the stipulation,—a contract by which the plaintiff's assignee gave the defendants a five-years' exclusive agency for the sale of the Bellthal mineral waters in the United States. It is not deemed material to decide whether that question is controlled by the law of New York or of Germany, as the rules of law in the two countries seem to be practically the same, so far as applicable to the question in hand,—the negotiation of a con-

tract by letters and telegrams. The letter of Casper of January 22, 1887, denying the existence of the contract, and that of defendants of February 18, 1887, claiming its existence, though put in evidence without objection, cannot be allowed to be conclusive either way. They were both written after the contract is alleged to have been made, and in any event they neutralize each other. Neither is the fact that both sides suggested a formal written contract, which was prepared, and never signed, conclusive either way. The fact is susceptible of two meanings,—either that the parties were only negotiating, and did not deem that any contract yet existed; or that they had substantially agreed, and desired the agreement to be reduced to a formal written document. As the contract could exist without such document, a refusal to sign it is not conclusive that no contract had been made. The dealings and correspondence of these parties prior to March 24th have not been explained. Casper's letter of that date speaks of prices, and of 'this year,' and 'the next year;' but no term of five years is mentioned, and the expressions quoted may well have referred to an expected course of dealing for several years, between the parties, simply as vendor and vendee. In defendants' letter of July 5, 1886, they request a reply by cablegram to the 'following conditions.' Then follows a schedule of prices, and closing with the expression, 'All other conditions in your favor, March 24th, are satisfactory, of course conditionally that such arrangement is for the sole agency in the U. S.' Here the word 'conditions' seems to be used synonymously with terms or prices and times of payments, but the expression, 'of course conditionally that such arrangement is for the sole agency in the U. S.,' cannot be so construed. To this letter the telegram 'Yes' was sent and received July 17th. As the answer was not restricted to terms or prices, it must be held to cover the whole letter. A party is bound, not merely by his own meaning, but by that meaning in which his language may fairly be taken by the other side. Here, then, was a contract, the grant of a sole agency for the United States. But it was not for five years, and therefore not the contract described in the stipulation. If it had appeared that, by the previous correspondence of the parties, an agency for five years was contemplated and discussed, the case would then be with defendants. On July 20, 1886, the defendants wrote: 'Under the conditions named in your letter of March 24th, this year, and those contained in our own of July 5th, to which we have received your reply by cable saying "Yes," we accept your agency for the exclusive sale of the Bellthal water within the limits of the U. S., and we would kindly request you to send us contract to this effect for the term of five years.' Of course, this acceptance of the agency was not needed. A mere agency was already agreed upon. But now for the first time the term of five years is proposed, and that needs to be agreed to. This may or may not have been the reason for asking for a written contract. Whether that was the reason or not, it is perfectly clear that no such contract yet existed. The next sentence in the letter is: 'Under these conditions, please ship us, by way of Rotterdam or Amsterdam, 200 hampers,' etc. Such goods were shipped about the 25th of August following. Subsequently, in the same letter, the defendants say: 'We should also suggest making us an allowance for advertising in our trade journals,' etc. Whether this was only a suggestion, or was also to be embraced within the expression, 'Under these conditions,' would be hard to say, but it is at least a new feature; and, though it be intended only to initiate a negotiation on that subject, yet, taken in connection with the request for a written contract, shows clearly that the defendants did not consider that there was yet in existence such a contract as they wished, just as the demand for five years shows that the cablegram 'Yes' had in their mind created a sole, but revocable, agency, without a term of years, for the whole United States. On the same day, July 20, 1886, plaintiff's assignor wrote to defendants, saying, after giving some details of shipments: 'You have to guaranty us the sale of 3,000 packages per year,'

etc., and, after some further business details, concludes the letter as follows: 'Sole agency of the United States of America. Should our London house make any sales in the United States, you will receive a commission of five per cent. on such sales. Those conditions we hope will be satisfactory to you, and we beg you to send us contract for our signatures.' These two letters crossed each other on the water.

"Here we have each party, on the same day, asking the other to send a written contract; one party putting in the letter the additional requirement of five years, and at least the suggestion of an allowance for advertising, and the other putting in his letter the requirement of a guaranty of sale of 3,000 hampers a year, and reserving the right to continue to make sales through their London house. Nothing can be plainer than that none of these terms have yet been agreed to by both parties. There being no contract contained in the letters, it is forcibly contended by defendants' counsel that the action of plaintiff's assignor in shipping goods to fill the order in defendants' letter of July 20th, was an acceptance of the proposed terms of contract; that the order was made conditionally, and filling it was an agreement. The plaintiff's counsel replies that if filling an order will amount to acceptance of a proposed contract, then the defendants accepted the terms of Casper's letter of July 20th, because in the letter of August 9th, acknowledging its receipt, they make an additional order for goods; that thus a contract was concluded, with a guaranty of the sale of 3,000 hampers per year, as well as the five-year term of agency; that therefore it is not the same contract mentioned in the stipulation, and the plaintiff cannot recover. It is not necessary now to determine whether the defendants' counsel is right in replying that it would be the contract described in the stipulation, although it might contain a provision or covenant not mentioned in that stipulation. The answer to plaintiff's contention is obvious. The letter of defendants of August 9th, in answer to Casper's of July 20th, says: 'On the return of our Mr. Julius Wile from his western trip, we will answer you more fully, and in the mean time we beg to confirm our dispatch of this day, reading 250 hampers, 50 cans, New Orleans, which you no doubt will understand,' etc. This letter thus becomes simply an order for goods, in the course of business, between buyer and seller, and the writer expressly reserves, for further consideration, 'your letter of July 20th,' by saying that on the return of Mr. Julius Wile they would answer more fully.

"This leaves but one question in the case,—did the act of plaintiff's assignor, in shipping the goods ordered in defendants' letter of July 20th, amount to a meeting of minds on the five-year agency, and so as to make a completed contract, without regard to other propositions made by either party? If so intended, it was certainly sufficient, and might be sufficient, without such intent, if it could not be otherwise correctly interpreted by the defendants. Parties can express their meaning and intent, their assent or dissent, as well by acts as in words. But the act must be susceptible of but one reasonable construction. If one merchant sends to another an order, and says plainly, 'Ship these goods only, if you will give me a sole agency for five years,' and the goods are sent without other advice, and nothing further appears, there would seem to be a meeting of minds, though whether in a contract for more than one year there would be a sufficient signing under the statute of frauds is not now considered. But there are other elements in this case. The defendants' letter of August 9th acknowledges receipt of Casper's letter of July 20th. The goods conditionally ordered in defendants' letter of July 20th were shipped August 25th. It is not shown when they reached New York, and that may not be material. Presumably they could not be taken from the Custom House until the consular invoice reached defendants. That was inclosed in Casper's letter of September 3d, advising the shipment. If the act of shipping was not complete until advised by letter inclosing the invoice; if the two must be taken as one act,—it was finished on the 3d of September. But if we hold the act

of shipment as sufficient of itself, and treat it as the law would treat a letter, the rule seems to be that as to a proposal it is made when received, and as to acceptance or refusal it is made and takes effect when mailed. So that in this view, whatever effect the act of shipping had, it had that effect on the 25th of August, and, nothing further appearing, would amount to an acceptance of the contract proposed by the defendants in letter of July 20th. But, when Casper wrote on September 3d, he evidently had received defendants' letter of August 9th, as he refers to 'the 250 hampers and 50 cans of New Orleans.' The time by mail is usually ten to twelve days, so that he must also be held to have received defendants' letter of August 9th before August 25th, when he shipped the goods. The situation of the parties, then, was this: They had exchanged proposed terms of contract, with material differences. Their minds had not met on paper. The defendants had made an order for goods conditioned on plaintiff's assignor agreeing to a five-year agency, but, before that order was filled, they had received Casper's letter of same date, July 20th, containing the additional and unacceptable proposition of 3,000 hampers a year. Also before it was filled they had written, and Casper had received, the letter of August 9th, advising that the terms of his letter of July 20th would be more fully answered on Julius Wile's return. The expression, 'in the mean time we beg to confirm our dispatch of this day,' referring to an order for goods, would seem to remit that order to the usual line of commercial transactions, without reference to a permanent contract. Each party had the proposal of the other, and neither had yet definitely answered. Casper knew that his demand for the sale of 3,000 a year was held under consideration, and could not know that it would not be accepted. There is no proof of its rejection earlier than defendants' letter of September 17th, when they inclosed to Casper a contract containing 'all the stipulations agreed upon by each in our letters, excepting the part of obliging ourselves to consume 3,000 packages.' This letter of defendants, written 17th September, twenty-three days after the date of the shipment, that is claimed to be decisive, shows that the defendants themselves still deemed the negotiations pending and undetermined, at least in the matter of getting a formal contract signed. In their letter of October 1st they say that Casper's letter of September 3d was received since their letter of September 14th. It is therefore only a presumption that it was received before the 17th. If it was, they knew of the shipment when they wrote on the 17th, and still did not treat it as making a contract, but continued the negotiations by inclosing a proposed contract on that day. Such knowledge on the 17th would only make inevitable the conclusion that there was then, in the judgment of the parties themselves, no contract.

"But such conclusion is still fairly reached without any proof, and without the aid of the presumption, based on the usual course of the mail, that on the 17th of September the defendants had received Casper's letter of the 3d of that month. Casper, by his letter of September 3d, had declined the proposed 'allowance for advertisements;' and, by rejecting only that, had presumably assented to the five-year term of sole agency contained in defendants' letter of July 20th. But that did not make a contract, for he did not accept the offer as made. He rejected the expense of advertising, and his own demand of 3,000 hampers a year, then under consideration, had not been accepted, and was rejected on the 17th September, so that there was as yet no agreement by letter. If his letter of September 3d must be held an acceptance of the five-year term, because not objected to, there was yet no contract. He did not withdraw his demand for the sale of 3,000 hampers a year, which had not yet been acted on, and without such withdrawal, his assent to the five years would not bind defendants to 3,000 hampers a year, so that there was still no contract binding on both parties. We thus see that each party knew, and by every letter was showing, that a negotiation was pending that the proposals made by each were materially different, and, as it

turned out, each rejected something the other had proposed, and Casper knowing, when he did the act that is supposed to indicate assent, that one of his proposals was still held under consideration. It is true that the rejection of the advertising expenses by Casper, and the rejection by the defendants of the covenant for 3,000 hampers a year, were after the act that is claimed to be decisive. But they are in the correspondence about the subject-matter. They are the acts of the parties who would be mutually bound if a contract existed, and they throw light on the state of mind of the parties; and that state of mind, whether two minds had met and assented, is the question in this case. Under these circumstances, shall the act of shipping the goods be held an unconditional assent to the contract proposed by defendants, without regard to, or amounting to a withdrawal of, the counter-proposition of the shipper? If it made a contract, what contract was made? Only that proposed by the defendants, or that and the counter-proposition welded into one? The latter inference is wholly untenable. Shipping the goods clearly did not bind the defendants to the 3,000 hampers a year,—a proposal they had not accepted, and afterwards rejected. Did it bind the plaintiff's assignor to a five-year agency? Taken by itself, it might well be so held. Taken in the light of the situation, and of the correspondence of the parties, to allow it this effect would be to give one item of evidence an undue probative force; allowing it to prove that there was a meeting of minds, when other evidence in the case clearly shows that they were material differences still under negotiation. It may be that in this attitude of the parties towards each other the defendants, who seem to have acted in entire good faith, and with no desire to defeat or postpone the payment of just bills, were not bound to receive the goods. But, having received them, the obligation to pay attaches. The only question before me, under the stipulation, is whether the contract therein described existed. I find that it did not, and that, therefore, judgment must be ordered for the plaintiff. \* \* \*"

Defendants appeal.

Argued before EHRLICH, McGOWN, and PITSHKE, JJ.

*S. F. Higgins,* (*D. Leventritt,* of counsel,) for appellants. *Henry Wehle,* for respondent.

EHRLICH, J. The very clear and close analysis of the evidence by the learned referee who tried the cause, has very much lightened the labor of the appellate court, and made unnecessary any extended review of the facts. The record shows that both parties below treated the question to be determined as one of law only, and appellants cannot be heard to say for the first time, on appeal, that any disputed matter of fact was involved in the trial. For a like reason, appellants' last point, that in any event it should be held there was a contract extending over a reasonable time, is raised too late to be considered here. Besides, the appellants here are pleading the alleged agreement as an affirmative defense. Therefore, if they claim damages or redress for non-performance of a contract to be executed in a reasonable time, their position is precisely that of plaintiffs in the case cited by appellants' counsel, and they, not respondent, must bear the burden of alleging and establishing the same. *Pope* v. *Car Co.,* 107 N. Y. 61, 13 N. E. Rep. 592. It might well be held, also, that defendants' Exhibit No. 5, upon which, confessedly, hinges the entire defense, should receive a construction less liberal for appellants than that suggested by the referee. The "conditions" under which a shipment was authorized and made are plainly the conditions therein enumerated, and do not at all include a contract for five years, which appellants requested respondent's assignor to execute. The judgment must be affirmed, with costs.

McGOWN and PITSHKE, JJ., concur.